DECISION
{¶ 1} In this original action, relator, Bobby Wilson, seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting such compensation.
 {¶ 2} This matter was referred to a magistrate of this court, pursuant to Civ.R. 53(C) and Loc.R. 12(M), of the Tenth Appellate District. Based upon the stipulation of evidence and the record, the magistrate has rendered a decision, including findings of fact and conclusions of law. Therein, the magistrate has recommended a limited writ of mandamus issue ordering the commission to vacate its order denying PTD compensation and upon further consideration, more fully develop an analysis of the nonmedical factors impacting on the question of PTD compensation. (Attached as Appendix A.) There have been no objections filed.
 {¶ 3} In general, the magistrate concluded that, based upon the record of proceedings, the commission abused its discretion by not properly or fully analyzing the impact of nonmedical factors on the question of PTD compensation. We agree.
 {¶ 4} Upon review, finding no irregularity with the magistrate's development of the factual background, and finding the magistrate's decision in accordance with law, we adopt the magistrate's decision as our own. Therefore, a writ of mandamus will issue ordering the commission to vacate its order denying PTD compensation and upon further consideration, evaluate the nonmedical factors and the impact of such factors on the issue of relator's entitlement to permanent total disability compensation.
Writ of mandamus granted.
BOWMAN and KLATT, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 IN MANDAMUS {¶ 5} In this original action, relator, Bobby Wilson, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
Findings of Fact:
 {¶ 6} 1. On November 18, 1977, relator sustained an industrial injury while employed as a laborer with respondent McGraw Construction Company, Inc., a state-fund employer. The job involved heavy unskilled labor. The industrial claim is allowed for: "Partial tear of biceps, right arm; thoracic outlet syndrome; myositis, right upper arm; acute neuropaxia of the brachioplexus; tendonitis, right shoulder; myofascitis of trapezius muscle at the base of the C-7 and T-1; sympathetic dystrophy; adjustment disorder with depressed mood and psychogenic pain," and is assigned claim number 77-38981.
 {¶ 7} 2. On July 21, 1999, relator filed an application for PTD compensation.
 {¶ 8} 3. On October 12, 1999, relator was examined by orthopedist John J. Brannan, M.D., on the commission's behalf. Thereafter, Dr. Brannan issued a report in which he opined that relator has a "100% upper extremity impairment" which equates to a "60% whole person impairment." Dr. Brannan opined that relator could not return to the jobs he had held "in the labor industry."
 {¶ 9} 4. Dr. Brannan also completed an occupational activity assessment report dated October 12, 1999.
 {¶ 10} 5. On October 15, 1999, relator was examined by psychiatrist Donald L. Brown, M.D. Dr. Brown wrote:
 {¶ 11} "* * * Mr. Wilson has reached MMI with respect to his previously allowed adjustment disorder with depressed mood and psychogenic pain and I think it can be considered permanent. Utilizing the Fourth Edition of the AMA Guides to the Determination of Permanent Impairment, I would rate him in the higher level of a Class III level of impairment which corresponds with a high moderate level of impairment. In order to return to the work place, he would need a very structured work setting with a very understanding work supervisor, otherwise there would be regression as soon has he felt he was being pressed beyond his physical capacities and this would fall under the category of a functional limitation."
 {¶ 12} 6. On December 14, 1999, Dr. Brannan issued an "addendum" to his prior report. The addendum states that its purpose "is to clarify statements previously made." In his addendum, Dr. Brannan concludes that relator has a "67 percent impairment of the right upper limb" which equates to a "40 percent whole person impairment."
 {¶ 13} 7. The commission requested an employability assessment report from Barbara E. Burk, a vocational expert. The Burk report, dated February 4, 2000, responds to the following query:
 {¶ 14} "Based on your separate consideration of reviewed medical and psycho-logical opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform. (A) immediately and/or (B) following appropriate academic remediation, or brief skill training."
 {¶ 15} Indicating acceptance of Dr. Brown's report, and responding to the above query, Burk wrote:
 {¶ 16} "Would need selective job placement, possibly with job coach."
 {¶ 17} Indicating acceptance of Dr. Brannan's report, and responding to the above query, Burk wrote:
 {¶ 18} "* * * Surveillance System Monitor; Gate Tender; Unarmed Security Guard
 {¶ 19} "* * * Training not recommended."
 {¶ 20} The Burk report further states:
 {¶ 21} "III EFFECTS OF OTHER EMPLOYABILITY FACTORS:
 {¶ 22} "* * * Question: How, if at all, do the claimant's age, education, work history or other factors (physical, psychological and sociological) effect his/her ability to meet basic demands of entry level occupations?
 {¶ 23} "Answer: Age: Based upon the Industrial Commission of Ohio guidelines for permanent and total disability, at age 55, Mr. Wilson is classified as a person of middle age. Individuals in this age category who have other limiting factors may find that age presents a barrier to employment. It is during middle age that individuals begin to learn new, unfamiliar tasks more slowly than the average worker. This affects their ability to compete with younger individuals. They benefit from having transferable skills.
 {¶ 24} "Education: Mr. Wilson completed the 7th grade in approximately 1956. Based upon the Industrial Commission of Ohio guidelines for permanent and total disability, Mr. Wilson is classified as a person who has a limited education. * * *
 {¶ 25} "* * *
 {¶ 26} "B. WORK HISTORY:
 {¶ 27} "Job Title * * * Skill Level Strength Level Dates
 {¶ 28} "Construction Worker II * * * Unskilled Heavy 1965-1977
 {¶ 29} "Beater-Engineer
 {¶ 30} "Helper * * * Unskilled Medium 1959-1965
 {¶ 31} "General Farmworker II * * * Unskilled Heavy Unknown
 {¶ 32} "* * *
 {¶ 33} "E. ADJUSTED WORKER TRAIT PROFILE:
 {¶ 34} "General Educational Development: (GED)
 {¶ 35} "Grade Level USDOL Level
 {¶ 36} "(R) Reasoning 3-6 2
 {¶ 37} "(M) Math 1-3 1
 {¶ 38} "(L) Language 1-3 1"
 {¶ 39} 8. In March 2000, a staff hearing officer ("SHO") issued an interlocutory order referring the PTD application for a new examination by a psychiatrist or psychologist. The SHO found that Dr. Brown had examined relator on a prior PTD application and was therefore not eligible to examine relator again.
 {¶ 40} 9. Pursuant to the SHO's interlocutory order, relator was examined on July 24, 2000, by clinical psychologist Norman L. Berg, Ph.D. Dr. Berg wrote:
 {¶ 41} "* * * In my opinion the claimant has reached maximum medical improve-ment in regard to the allowed conditions of `Adjustment Disorder with depressed mood and Psychogenic Pain.' I rate the claimant as having 25% permanent impairment arising from the allowed condition of `Psychogenic Pain,' and I also rate the claimant has having 20% permanent impairment arising from the allowed condition of `Adjustment Disorder with depressed mood.' This would be in addition to any rating given for the other allowed conditions. * * *"
 {¶ 42} 10. Dr. Berg also completed an occupational activity assessment form dated July 24, 2000. The form poses the following two-part query to the examining psychologist:
 {¶ 43} "Based on the impairment resulting from the allowed/alleged psychiatric/-psychological condition(s) only, can this claimant meet the basic mental/behavioral demands required [to]:
 {¶ 44} "[a] return to any former position of employment?
 {¶ 45} "[b] perform any sustained remunerative employment?"
 {¶ 46} Dr. Berg answered the two-part query by indicating that relator could not return to any former position of employment, but he can perform sustained remunerative employment. On the form, Dr. Berg further wrote:
 {¶ 47} "* * * Claimant is able to understand and follow simple directions. He is fairly well able to maintain attention and concentration while doing simple tasks. He seems able to relate adequately to others even though he reports being uncomfortable in crowds. He functions in a moderate to moderately slow manner. Psychologically, he is able to sustain his level of activity. His ability to cope with routine job stress is impaired to a moderate degree by above noted allowed conditions. * * *"
 {¶ 48} 11. The PTD application was set for a hearing before an SHO on August 30, 2000. Following the hearing, the SHO issued an order stating:
 {¶ 49} "The Staff Hearing Officer requests that an addendum be obtained by vocational evaluator, Ms. Burk considering the medical report of Dr. Berg in her analysis of the claimant's re-employment potential.
 {¶ 50} "Thereafter, reset for hearing on claimant's application for Permanent Total Disability Compensation."
 {¶ 51} 12. Pursuant to the SHO's order, in November 2000, Burk issued an addendum to her employability assessment report. Indicating acceptance of Dr. Berg's reports and responding to the query, Burk wrote:
 {¶ 52} "* * * Commercial/Institutional Cleaner; Kitchen Helper; Dining Room Attendant.
 {¶ 53} "* * * Training is not recommended."
 {¶ 54} The Burk addendum further states:
 {¶ 55} "III EFFECTS OF OTHER EMPLOYABILITY FACTORS:
 {¶ 56} "* * * Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
 {¶ 57} "Answer: Mr. Wilson is now 56 years old, has a 7th grade education and has been out of the competitive labor market since November 1977. Considering these non-medical factors in combination with the restrictions placed upon him by Dr. Berg, it is highly improbable that Mr. Wilson would successfully complete an academic remediation or skill enhancement program that result in sedentary or light work activity.
 {¶ 58} "* * * Question: Are there significant issues regarding potential employ-ability limitations or strengths which you wish to call to the SHO's attention?
 {¶ 59} "Answer: The restrictions presented by Dr. Berg dramatically limit Mr. Wilson's occupational base. Jobs at the sedentary level require an ability to meet quotas and probably would be beyond Dr. Berg's assessment of Mr. Wilson's ability to cope with routine job stress. Jobs listed in 1A have physical demands that are at a light level or greater. Although this information relates to physical functional capacity needed to perform jobs in our labor market, it is presented so that the State Hearing Officer can have an accurate picture of how the restrictions placed upon Mr. Wilson by Dr. Berg affect Mr. Wilson's occupational base."
 {¶ 60} 13. Following a January 23, 2001 hearing, the SHO issued an order denying the PTD application. Initially, the order summarizes Dr. Brannan's reports, and then summarizes the Berg reports. The order then reads:
 {¶ 61} "The Staff Hearing Officer finds that the claimant is unable to return to his former position of employment as a result of the allowed orthopedic and psychological conditions in the claim. The Staff Hearing Officer further finds that the claimant is capable of performing sedentary employment with the limitations and capabilities as set forth in the medical reports and Occupational Activity Assessment Forms completed by Dr. Brannan and Dr. Berg.
 {¶ 62} "An employability assessment of the claimant was performed by Ms. Burk at the request of the Industrial Commission. Ms. Burk prepared an original report and an addendum in order to consider all of the evidence relevant to the issue of the claimant's employability. In her addendum report, Ms. Burk opined that considering the residual functional capacities as set forth by Dr. Brannan and Dr. Berg, the claimant has the following employment options: Commercial/Institutional Cleaner, Kitchen Helper, and Dining Room Attendant. Ms. Burk noted the claimant's age of 56 and stated that he is categorized as a person of middle age. Ms. Burk opined that the claimant's age may affect his ability to compete with younger individuals for employment opportunities and may limit his ability to learn new, unfamiliar tasks as readily as the average worker. She further noted his 7th grade education which she classified as a limited education. Ms. Burk opined that the claimant may have difficulty performing tasks found in the semi-skilled and skilled work category. Ms. Burk classified the claimant's academic achievement record as a barrier to employment. Finally, Ms. Burk noted the claimant's poor work history. She noted that the claimant has performed work as a construction worker, beater-engineer helper and general farm worker. Ms. Burk classified the claimant's work history as unskilled and ranging in physical demand from medium to heavy work. She characterized the claimant's work history as a negative factor when assessing his employability.
 {¶ 63} "The Staff Hearing Officer finds that the claimant is 56 years of age, has a 7th grade education, and work experience as a construction worker, beater-engineer helper and general farm worker. The Staff Hearing Officer finds that the claimant's age is a neutral factor which would not prevent him from adapting to new work rules, processes, methods, procedures and tools involved in a new occupation. The Staff Hearing Officer further finds that the claimant's education is a limitation which would limit the claimant's ability to access a wide range of occupations in the sedentary range of occupations. However, the Staff Hearing Officer finds that the claimant would be capable of accessing unskilled, entry-level occupations in the sedentary range. The Staff Hearing Officer further finds that the claimant's work history does not present him with transferable work skills. However, the Staff Hearing Officer finds that the claimant is able to access unskilled entry-level occupations within the sedentary range of work. Considering the claimant's age, education and work experience in conjunction with his physical and psychological limitations and capabilities due to the allowed conditions, the Staff Hearing Officer finds that the claimant is able to perform the employment options noted in the vocational report of Ms. Burk, such as: Commercial/Institutional Cleaner, Kitchen Helper and Dining Room Attendant. Accordingly, the Staff Hearing Officer finds that the claimant is able to engage in sustained remunerative employment.
 {¶ 64} "This order is based on the medical reports of Dr. Brannan and Dr. Berg and the vocational reports of Ms. Burk."
 {¶ 65} 14. Relator moved for reconsideration of the SHO's order of January 23, 2001. On June 30, 2001, the commission mailed an order denying reconsideration.
 {¶ 66} 15. On September 12, 2002, relator, Bobby Wilson, filed this mandamus action.
Conclusions of Law:
 {¶ 67} Because the commission's analysis of the non-medical factors is seriously flawed, it is the magistrate's decision that this court issue a writ of mandamus, as more explained below.
 {¶ 68} For its threshold medical determination, the commission relied upon the reports of Drs. Brannan and Berg, and concluded that relator retains the residual medical capacity for sedentary employment.
 {¶ 69} The commission's determination that relator is medically capable of sedentary employment is not under challenge in this action. However, relator does challenge the commission's analysis of the non-medical factors.
 {¶ 70} The commission is the expert on the non-medical factors. State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266. 271. In analyzing the non-medical factors, the commission may credit offered vocational evidence, but expert opinion is not critical or even necessary. Id.
 {¶ 71} Also, the commission may reject the conclusion of a vocational report and draw its own conclusion from the same non-medical information. State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139,141. Here, the commission's non-medical analysis involves heavy reliance upon the findings and conclusions contained in the Burk vocational reports mixed with some of the commission's own observations.
 {¶ 72} It is in her addendum report that Burk renders vocational findings based upon Dr. Berg's psychological assessment. In her addendum, Burk concludes that "[j]obs at the sedentary level require an ability to meet quotas and probably would be beyond Dr. Berg's assessment of Mr. Wilson's ability to cope with routine job stress." In other words, based upon Dr. Berg's psychological report, Burk concludes that relator cannot perform sedentary employment because he could not meet job quotas.
 {¶ 73} Burk then states that the "employment options" she has listed for Dr. Berg's assessment "have physical demands that are at a light level or greater."
 {¶ 74} Apparently, Burk concluded that given Dr. Berg's psychological assess-ment, relator cannot perform sedentary work but he can perform some types of work at the light exertional level or greater.
 {¶ 75} The problem here is that, given the commission's reliance upon the reports of Drs. Brannan and Berg, and its conclusion that relator is medically restricted to sedentary employment, Burk's addendum assessment of Dr. Berg's restrictions indicates that relator cannot perform sedentary employment.
 {¶ 76} In short, the commission cannot rely upon the Dr. Berg and Burk reports and then conclude that relator is medically and vocationally able to perform sedentary employment.
 {¶ 77} In its order, the commission specifically held that relator has the employment options listed in Burk's addendum: "Commercial/Institutional Cleaner, Kitchen Helper and Dining Room Attendant." However, Burk says that these employment options have physical demands that are at the light level or greater. Given the commission's threshold medical determination, relator cannot meet those "employment options."
 {¶ 78} The commission here attempts to defend its order by arguing that it has no duty to list the "employment options" in its order. The commission argues that its listing of the "employment options" in Burk's addendum is nothing more than a clerical error, that it should have listed the employment options from Burk's original report.
 {¶ 79} The magistrate disagrees with the commission's argument that its order can be saved because it had no duty to list the employment options.
 {¶ 80} The fundamental flaw with the commission's order is not with its listing of employment options. As previously noted, Burk concludes in her addendum report that relator cannot perform sedentary employment given Dr. Berg's assessment, yet the commission found that relator is limited to sedentary employment due to the physical and psychological conditions of the claim.
 {¶ 81} It is the commission's reasoning or analysis that is flawed with respect to the non-medical factors. It is on this basis that the magistrate finds that the commission abused its discretion.
 {¶ 82} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's PTD application, and in a manner consistent with this magistrate's decision enter a new order either granting or denying the PTD application.